*Court of Common Pleas, Dauphin County, April 7th, 1854.*

NEWBECKER *v.* THE SUSQUEHANNA RAILROAD COMPANY.

A report of viewers to assess the damage caused by the building of a railroad,
   will not be set aside because one of the viewers had a claim against the
   company for damages for altering a county road so as to pass through his
   land. Those persons only are disqualified from acting as viewers whose
   property immediately adjoins the railroad.
A party, knowing of a legal objection to a viewer, must make it before the
   report is made.

BY THE COURT.—We are asked to set aside the report in this
case, because one of the viewers, Augustus Shammo, owned land
in the vicinity of the railroad, and had a claim for damages on
account of a change, made by the company, of a county road, and
carrying the same through his land. By the evidence it appears
that Mr. Shammo had an interest in right of his wife, and also
as part owner in a tract of land situated about three-quarters of a
mile from the line of the railroad. The company, in locating
its road along the river, destroyed a county road by occupying its
site; and, in consequence thereof, laid out another road as a sub-
stitute through the land of Shammo, partly on the site of an old
road, partly through new ground, for which damages are claimed.
On the petition of any person whose land is injured, the court is
required "to appoint seven discreet and disinterested freeholders
of the county, none of whom shall be residents or owners of property
upon or adjoining the line of such railroad," who are to view and
assess the damages. The legality of Mr. Shammo's appointment
depends upon the construction given to the words "residents or
owners of property *upon* or *adjoining* the line of such railroad."
The evident intention of the act of Assembly is to exclude those
persons from acting as viewers, who reside or own land upon or
adjoining the line of railroad. But for the word "adjoining,"
we might feel at a loss to properly interpret the meaning of the
legislature. The obvious design is to guard against prejudice or
predilection; and had the words "upon the line of the railroad"
been alone used, we should have felt bound to exclude all such
persons from acting as viewers, as resided immediately upon the
line, or in such close proximity as probably to be influenced by
their location. In common parlance, "upon the line of the rail-
road," might be understood to mean *immediately upon,* or within
the distance of several miles, having in view the general scope of
the language, and the abundance or paucity of such improve-
ments in the neighborhood. In a country where railroads abound,
a man's land would not, in common parlance, be spoken of as
on the line of railroad, unless *immediately* upon it. Whilst,
where there were no other improvements of that character in the
country, it would be spoken of as on the line of railroad when
several miles distant. As used in this statute, "adjoining" clearly

[Newbecker *v.* The Susquehanna Railroad Company.]

qualifies and explains what is meant; and we understand two classes of persons to be embraced in the exclusion. Those residing upon, or whose land is actually cut or passed over by the line of the railroad; and those owning land immediately adjoining the land so passed over. The legislature did not intend to exclude any resident or owner of land at a greater distance. There is no evidence in this case that the land of Mr. Shammo adjoined any tract through which the railroad passed; and there is no pretence that his land was touched by it. It is said that the viewer was precluded from acting, because his land was invaded by a county road, laid out by order of the railroad company in the room of the one occupied; and therefore he comes within the prohibition of the act. It certainly does not come within the letter of the law, which only relates to the resident or property-owner on, *or adjoining* the line of *railroad;* not a county road in its vicinity, whether laid out by the railroad company or viewers under an order of court. It does not come within the mischiefs designed to be avoided; as the law presumes that the resident or property-owner would be prepossessed in favor of, or prejudiced against the railroad company, on account of the advantages or disadvantages arising from its proximity. A matter which could scarcely be predicated of any ordinary county road, which this becomes, when laid out. The statute was intended to operate throughout the State; and although in some counties the road might be considered an annoyance and injury, yet in others it would be esteemed a convenience and benefit; in others again it might appear indifferent. We cannot extend the statute by interpretation. Had the situation of this viewer's property been known to the court, it would very properly have influenced our discretion in making the appointment, but it is no more a legal bar than would have been the fact that the viewer claimed damages on account of stone or gravel dug by the company from his premises, where the same were situated many miles from the line of the road. Besides, if an objection was intended to be raised to this viewer acting, it should have been done before the report was made. It is well settled that a·party, knowing of a legal objection to a juror, viewer, or arbitrator, must make it known before the verdict, report, or award is made out, or he is forever precluded from urging it. The legal presumption is, that this objection was known to the company as well before as since the report, unless the party objecting will show that it came to the knowledge of its officers, agents, or attorney since. Therefore, we are of the opinion that the exception is not sustained; and there being none others urged than the one referred to, the report is confirmed.

*McCormick, for plaintiff.*

*Kunkel, for defendant.*